UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
MELISSA SANTORO, individually and on behalf
of all others similarly situated,

                           Plaintiff,

     - against -

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

                           Defendant.
-------------------------------------------------------------x

**OPINION & ORDER**

No. 19-CV-9782 (CS)

Appearances:

Philip L. Fraietta
Bursor & Fisher, P.A.
New York, New York

Frederick J. Klorczyk III
Bursor & Fisher, P.A.
Walnut Creek, California
*Counsel for Plaintiff Santoro*

Douglas W. Dunham
Dechert LLP
New York, New York
*Counsel for Defendant*

Seibel, J.

     Before the Court is Defendant's motion to dismiss.  (Doc. 17.)  For the following reasons,

the motion is GRANTED.

# I.    **BACKGROUND**

     I accept as true the facts, but not the conclusions, set forth in Plaintiff's Amended

Complaint.  (Doc. 13 ("AC").)  Plaintiff Melissa Santoro is a New York citizen who for many

years has insured her vehicles through Defendant State Farm Mutual Automobile Insurance

Company.  (*Id.* ¶ 9.)  Under her insurance policies, "the premium is due and payable in full on or before the first day of the policy period" unless "otherwise provided by an alternative payment plan in effect with" Defendant.  (Doc. 19 Ex. A at 33; *id.* Ex. B at 33;[1] *see* AC Ex. A (referring to obligation to pay full premium for entire term of policy).)  Plaintiff opted for an installment payment plan, the terms of which are set forth in the State Farm Payment Plan ("SFPP") Agreement.  (AC Ex. A.)

Under that agreement, "State Farm agrees to accept periodic premium payments (monthly, quarterly, semiannually) rather than the full premium for the entire term of [the insured's] insurance policies."  (*Id.* Ex. A.)  The agreement provides three options:  "Non Recurring Accounts," which are charged a $3 fee; "Recurring Accounts Print Billing Notice," which are charged a $2 fee; and "Recurring Accounts," which are charged a $1 fee.  (*Id.* Ex. A.)  These options also appear on a portion of Defendant's website – set out below – entitled "Lower Installment Fees with Paperless Billing," with language stating, "Selecting the paperless option for your State Farm Payment Plan may result in a reduction of your SFPP installment fee.  Please see the schedules below for details."[2]  (*Id.* ¶ 2.)

---

[1] Because Exhibits A and B to Doc. 19 both comprise several documents that are not consecutively paginated, citations refer to the page numbers generated by the Court's electronic case filing system.

[2] It appears that this portion of Defendant's website has been removed or replaced, as the link provided in the AC is no longer active.

## All US States Except Kentucky and Missouri

| Payment Option (How I pay my bill) | Do I get a paper bill? | Service Fee |
| --- | --- | --- |
| Pay by check | Yes | $3 |
| Recurring Monthly automatic payment | Yes | $2 |
| Recurring Monthly automatic payment | ONLY when the amount you pay changes | $1 |
| Pay online using Insurance Bill Pay* | No | $1 |

*NOTE: Recurring Monthly accounts are not eligible to make payments through Insurance Bill Pay, although you can turn off paper billing for them.

(*Id.*)  In sum, installment payors who choose automatic electronic payments pay less than installment payors who pay by check, and automatic electronic installment payors who eschew a monthly paper bill pay less than those who receive such a bill.  Plaintiff elected the "Non Recurring Account" option, a non-automatic payment mode under which (at least since 2016) she pays in installments by check, receives paper bills, and pays a $3 service fee with each installment payment.  (*Id.* ¶¶ 1-2, 9.)

Plaintiff alleges that Defendant violates New York State law by charging its insurance customers "an additional or differential fee to receive a paper billing statement and/or pay by United States mail."  (*Id.* ¶ 3; *see id.* ¶ 24.)  Specifically, Plaintiff alleges that "only those insurance customers who '[r]equest[] a billing be mailed each month,' incur an additional $1 fee above the standard $1 fee for recurring installment accounts (i.e., $2 total).  And only customers who choose to pay with a 'Non Recurring Account[]' (i.e., pay by check) incur an additional $2 fee above the standard $1 fee for recurring installment accounts (i.e., $3 total)."  (*Id.* ¶ 4 (alterations in original).)  She alleges that such fees violate New York General Business Law ("GBL") § 399-zzz, which is enforceable through GBL § 349.  (*See id.* ¶ 5.)

Plaintiff filed this lawsuit on October 23, 2019.  (Doc. 1.)  Thereafter, Defendant filed a letter in contemplation of a motion to dismiss, Plaintiff responded, and the Court held a pre-

3

motion conference on January 10, 2020, at which the Court granted Plaintiff leave to amend her complaint.  (*See* Docs. 8, 12; Minute Entry dated Jan. 10, 2020.)  Plaintiff filed her Amended Complaint on January 23, 2020, (AC), and the instant motion followed, (Doc. 17).

## II.    LEGAL STANDARD

### A.    Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555 (alteration, citations, and internal quotation marks omitted).  While Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  *Iqbal*, 556 U.S. at 678-79.

In considering whether a complaint states a claim upon which relief can be granted, the court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then determines whether the remaining well-pleaded factual allegations, accepted as true, "plausibly give rise to an entitlement to relief."  *Id.* at 679.  Deciding whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.*

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Id.* (alteration omitted) (quoting Fed. R. Civ. P. 8(a)(2)).

### B. Documents Properly Considered

On a motion to dismiss, a court is generally confined to the four corners of the complaint, the documents incorporated in or attached thereto, documents on which the plaintiff relied in bringing the case, and things of which it is entitled to take judicial notice. *See Kleinman v. Elan Corp.*, 706 F.3d 145, 152 (2d Cir. 2013). In addition to the Amended Complaint, I also consider the "State Farm Payment Plan Agreement" that Plaintiff attached to her Amended Complaint and on which she expressly relies. (*See* AC ¶ 3.) I also consider the relevant insurance policies, (Doc. 19 Exs. A-B). *See Pastor v. Woodmere Fire Dist.*, No. 16-CV-892, 2016 WL 6603189, at *4 (E.D.N.Y. Nov. 7, 2016) (collecting cases).

## III. DISCUSSION

Plaintiff's claim is based on GBL § 399-zzz(1), which prohibits businesses from "charg[ing] a consumer an additional rate or fee or a differential in the rate or fee associated with payment on an account when the consumer chooses to pay by United States mail or receive a paper billing statement." It further provides that "[t]his subdivision shall not be construed to prohibit a [business] from offering consumers a credit or other incentive to elect a specific payment or billing option." N.Y. Gen. Bus. Law § 399-zzz(1). Section 399-zzz(2) provides that "[e]very violation of this section shall be deemed a deceptive act and practice subject to enforcement under article twenty-two-A of this chapter." *Id.* § 399-zzz(2). Article 22-A, in turn, includes GBL § 349, which prohibits "[d]eceptive acts or practices in the conduct of any

business, trade or commerce or in the furnishing of any service." *Id.* § 349(a).  The viability of
Plaintiff's claim depends on the meaning of § 399-zzz(1).

Under New York law, "the correct interpretation of a statute is ordinarily an issue of law
for the courts."  *Roberts v. Tishman Speyer Props., L.P.*, 874 N.Y.S.2d 97, 104 (App. Div. 2009),
*aff'd*, 13 N.Y.3d 270 (2009).  "[I]n interpreting a statute, it is fundamental that a court ascertain
and give effect to the intention of the Legislature."  *Id.* at 105 (internal quotation marks omitted);
*accord Commack Self-Serv. Kosher Meats, Inc. v. Hooker*, 680 F.3d 194, 208 (2d Cir. 2012).
Because "the clearest indicator of legislative intent is the statutory text, the starting point in any
case of interpretation must always be the language itself, giving effect to the plain meaning
thereof."  *Roberts*, 874 N.Y.S.2d at 105 (internal quotation marks omitted).  "[A] statute or
legislative act is to be construed as a whole, and all parts of an act are to be read and construed
together."  *MacNeil v. Berryhill*, 869 F.3d 109, 113 (2d Cir. 2017) (internal quotation marks
omitted).

Defendant argues that Plaintiff's claim fails because:  (1) Defendant's installment plan
fees are permissible incentives under the statute; (2) Defendant's notices or statements for
Recurring Accounts are not "billing statement[s]" within the meaning of the statute; and
(3) § 399-zzz is preempted by federal law.  (Doc. 18 ("D's Mem.") at 8-23.)

A.    **Permissible Incentives**

1.    **The Plain Language of § 399-zzz**

Defendant's installment plan fees do not violate § 399-zzz because they are based on
permissible incentives for which the statute expressly provides.  The full text of § 399-zzz(1)
reads as follows:

Subject to federal law and regulation, no person, partnership, corporation, association or
other business entity shall charge a consumer an additional rate or fee or a differential in

the rate or fee associated with payment on an account when the consumer chooses to pay by United States mail or receive a paper billing statement.  This subdivision shall not be construed to prohibit a person, partnership, corporation, association or other business entity from offering consumers a credit or other incentive to elect a specific payment or billing option.

The first sentence prohibits a company from charging a "consumer an additional rate or fee . . . when the consumer chooses to pay by United States mail or receive a paper billing statement."  *Id.*  The second sentence mandates that that subdivision "shall not be construed to prohibit a . . . corporation . . . from offering consumers a credit or other incentive to elect a specific payment or billing option."  Both of the above-quoted sentences must be given effect and harmonized.  *See* N.Y. Stat. Law § 98 ("All parts of a statute must be harmonized with each other as well as with the general intent of the whole statute, and effect and meaning must, if possible, be given to the entire statute and every part and word thereof."); *Weyant v. Phia Grp. LLP*, No. 17-CV-8230, 2018 WL 4387557, at *9 (S.D.N.Y. Sept. 13, 2018) (citing N.Y. Stat. Law § 98).

Section 399-zzz's provision allowing a business to offer "a credit or other incentive to elect a specific payment or billing option" necessarily presupposes and permits that an incentivized payment or billing option may carry a lower fee than a non-incentivized option. Under the statute, the fact that such reduced fees (whether achieved by means of a credit or other incentive) are charged for a particular payment or billing option that a business wishes to incentivize cannot be interpreted as rendering a higher, non-incentivized fee improper.  Such a result would effectively construe § 399-zzz to prohibit incentives, thus writing the second sentence out of the statute.  In order to give meaning to both parts of the statute, *see* N.Y. Stat. Law § 98; *Andryeyeva v. New York Health Care, Inc.*, 33 N.Y.3d 152, 177 (2019), its language must be read as prohibiting the general imposition of an additional cost for paper billing and

payment by mail, and prohibiting the offering of a general discount for forgoing paper billing and payment by mail, but permitting a business to use such a cost or discount to incentivize a *specific* payment or billing option.  Defendant's incentivized payment option – preauthorized, automatic, recurring electronic funds transfers – fits within the permissible category of a "specific payment or billing option" that a business may offer incentives to encourage.[3]  If the fact that another payment plan – here, Plaintiff's – is not incentivized rendered the incentivized option subject to § 399-zzz's prohibition on a "differential in the rate or fee," the first sentence of § 399-zzz would cancel out the second.  The only plausible interpretation of the statute in its entirety is that Defendant could not levy a charge for paper billing or payments by check as a general matter, nor could it offer a general discount for anyone who paid electronically or declined paper bills, but it could incentivize installment payors to choose automatic recurring electronic payments by offering a reduced charge for that specific mode of payment.[4]

---

[3] There are various ways to transfer funds electronically.  *See, e.g.*, Electronic Fund Transfer Act, 15 U.S.C. § 1693a(6) ("the term 'electronic fund transfer' means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, or computer or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account.  Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, direct deposits or withdrawals of funds, and transfers initiated by telephone.").  "State Farm, however, incentivizes only a specific type of electronic fund transfer, namely a preauthorized electronic fund transfer, which is defined as 'an electronic fund transfer authorized in advance to recur at substantially regular intervals.'"  (D's Mem. at 10 (quoting 15 U.S.C. § 1693a(10)).)

[4] Defendant argues that the additional cost reduction (from $2 to $1) for recurring automatic electronic payors who agree not to receive paper statements is a further incentive for a "specific . . . billing option" permitted under the statute.  (D's Mem. at 12.)  It also contends that the statements sent to recurring automatic electronic payors are not "billing statements" within the meaning of the statute, but just notifications, because they do not require any action on the recipient's part.  (*Id.* at 2.)  I need not reach these arguments because Plaintiff did not choose either recurring automatic electronic payment plan, so she could not have been harmed even if there were a prohibition on charging $1 more for a paper statement accompanying such payments.  *See* N.Y. Gen. Bus. Law § 349(h) ("[A]*ny person who has been injured* by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or

Plaintiff alleges that Defendant's $3 "Service Charge" or "Installment Fee" constitutes an unlawful fee, (AC ¶¶ 1, 26), because "all installment customers begin with a $1 fee, then have an additional $1 fee added in order to receive a paper billing statement, and then have an additional $1 fee added in order to pay by United States mail," (Doc. 20 ("P's Opp.") at 15-16). Plaintiff's characterization of the $1 fee for recurring electronic payments without paper statements as the default or basic charge is conclusory. Plaintiff provides no factual basis for this bare allegation. Instead, Plaintiff provides a chart from Defendant's website. (AC ¶ 2.) The chart shows, from top to bottom, that (1) those who pay by check receive a paper bill and are charged $3, (2) those who pay by recurring monthly automatic payment receive a paper bill and are charged $2,[5]

_____

practice [or] an action to recover his actual damages . . . .") (emphasis added); *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 124 (2d Cir. 2017) ("To state a claim for a § 349 violation, a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) *plaintiff suffered injury* as a result of the allegedly deceptive act or practice.") (emphasis added) (internal quotation marks omitted); *Himber v. Intuit, Inc.*, No. 10-CV-2511, 2012 WL 4442796, at *9-10 & n.7 (E.D.N.Y. Sept. 25, 2012) (plaintiffs lacked standing and failed to state a plausible claim under § 349 because they did not plead a cognizable injury); *Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris USA Inc.*, 3 N.Y.3d 200, 208 (2004) ("[I]t is beyond dispute that section 349(h) permits an actually (nonderivatively) injured party to sue a tortfeasor. We hold simply that what is required is that the party actually injured be the one to bring suit."). *See generally Sprint Commc'ns Co. v. APCC Servs., Inc.*, 554 U.S. 269, 273-74 (2008) ("[I]n order to have Article III standing, a plaintiff must adequately establish: (1) an injury in fact (*i.e.*, a concrete and particularized invasion of a legally protected interest); (2) causation (*i.e.*, a fairly traceable connection between the alleged injury in fact and the alleged conduct of the defendant); and (3) redressability (*i.e.*, it is likely and not merely speculative that the plaintiff's injury will be remedied by the relief plaintiff seeks in bringing suit).") (internal quotation marks and alterations omitted).

[5] Plaintiff argues that the difference between the $3 fee and $2 fee is the result of an "additional $1 fee added in order to pay by United States mail." (P's Opp. at 16.) But the chart does not support Plaintiff's argument that the "Pay by check" option means "pay by United States mail." While it may be true that those who elect the "Pay by check" option typically use United States mail to deliver their payment, there is no requirement that they do so. A policyholder could drop off a check at a State Farm office. It is plain that Defendant wishes to incentivize non-check (electronic) payments – which obviously require less work for Defendant to process – and otherwise would be indifferent to whether it received a paper check by hand or by mail.

9

(3) those who pay by recurring monthly automatic payment and only receive a paper bill when the amount they pay changes are charged $1, and (4) those who pay online using something called Insurance Bill Pay (which the parties do not explain) do not receive any paper bill and are charged $1. (*Id.*)

The chart and its contents do not support Plaintiff's characterization of the $1 fee as the default. (Indeed, the policies and the SFPP Agreement make clear that the default is paying the full premium at the start of the policy period.) The chart simply presents information about the available options and fees for insureds who choose installment payments. It does not purport to identify a "default fee" and does not label the various fees as discounts or increases. And even if the table could be read as identifying a default fee, Plaintiff's characterization of the $1 fee as the default fee requires reading the chart upside down. The chart *begins* by listing the $3 fee first and is followed by payment options with lower fees.

Moreover, logically, under the chart and contractual provisions of the SFPP Agreement, the default fee is the $3 fee. Plaintiff's complaint recognizes as much by noting that the chart appears on "a portion of Defendant's website entitled 'Lower Installment Fees with Paperless Billing,' [and] states '[s]electing the paperless option for your State Farm Payment Plan may result in a reduction of your SFPP installment fee.'" (AC ¶ 2 (second alteration in original).) This language suggests that Defendant is reducing fees, as opposed to raising them.

Under the SFPP Agreement, the "default" position – *i.e.*, the result that occurs in the absence of any affirmative choice otherwise by the policyholder – is a Non Recurring Account, with paper billing statements and non-automatic installment payments. (*Id.* Ex. A.) That is because the $1 and $2 fees for "Recurring Accounts" require authorization by the policyholder before the associated payment option (a "Recurring Monthly Payment Option") can be

implemented – specifically, the policyholder must sign up for automatic electronic payments through his or her financial institution.  (*Id.* Ex. A.)  Defendant cannot implement automatic payments from a policyholder's bank account without such action by the policyholder.  *See* 15 U.S.C. § 1693e(a) ("A preauthorized electronic fund transfer from a consumer's account may be authorized by the consumer only in writing").

For these reasons, Plaintiff's interpretation of the $1 fee as the default and the larger fees as "additional" or "differential" fees for paper billing or payment by mail is not plausible.

### 2.    Canons

Plaintiff further argues that Defendant's payment options run afoul of § 399-zzz because the benefit from choosing automatic recurring electronic payments is not a "credit or other incentive" within the meaning of the statute.  Specifically, Plaintiff claims that various canons of statutory interpretation require limiting the phrase "credit or other incentive" to mean "credit," "rebate," "refund," or "return of payment," (P's Opp. at 7-8), but not "reduced fee" or "discount."  The law does not support this argument.  Contrary to Plaintiff's assertions, a credit against part of a fee is not meaningfully different from a reduction in the amount of a fee. Whether a policyholder receives a "credit," "rebate," "refund," "return of part of a payment," "partial reduction" or "discount," the effect is the same:  the policyholder pays less.

Plaintiff's reliance on *noscitur a sociis* and *ejusdem generis*[6] to limit the reach of the phrase "credit or other incentive" is not persuasive because those canons generally apply to

---

[6] Under the canon *noscitur a sociis* – it is known from its associates – "words grouped in a list should be given related meaning."  *Dole v. United States Steelworkers of America*, 494 U.S. 26, 36 (1990) (internal quotation marks omitted).  Put another way, "words employed in a statute are construed in connection with, and their meaning is ascertained by reference to the words and phrases with which they are associated."  *See* N.Y. Stat. § 239.  Under the canon *ejusdem generis* – of the same kind – the scope of a word is limited by its surrounding terms.  *Id.*  Thus, "when a

"lists" or "strings" of words, not to a pairing of a specific word and a more general word. *E.g.*,

*Yates v. United States*, 574 U.S. 528, 544-45 (2015) (applying canons *noscitur a sociis* and

*ejusdem generis* to list of nouns); *Miranda v. Norstar Bldg. Corp.*, 909 N.Y.S.2d 802, 806-07

(App. Div. 2010) (applying *ejusdem generis* to interpret "devices" in the statutory list

"scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and

other devices"); *see United States v. Lauderdale County*, 914 F.3d 960, 967 (5th Cir. 2019)

(declining to apply *noscitur a sociis* because the phrase "does not contain a string of terms;

rather, it contains two independent clauses separated by a disjunctive 'or.'"); *United States v.*

*Buluc*, 930 F.3d 383, 390 (5th Cir.) ("the operative phrase . . . lacks the string of statutory terms

necessary to invoke the canon") (internal quotation marks omitted), *cert. denied*, 140 S. Ct. 544

(2019); *Pellegrino v. U.S. Transp. Sec. Admin.*, 937 F.3d 164, 174-75 (3d Cir. 2019) ("When

Congress has separated terms with the conjunction 'or,' [*noscitur a sociis*] often is of little

help.") (internal quotation marks omitted).  And even if those canons did apply, they would

require only that "incentive" not be given "the most expansive meaning possible, but . . . held to

apply only to the same general kind or class as those specifically mentioned" – which would

encompass a reduced fee or discount.  *Miranda*, 909 N.Y.S.2d at 806 (internal quotation marks

omitted).[7]

In *Expedia, Inc. v. City of New York Department of Finance*, 22 N.Y.3d 121, 127-28

(2013), which Plaintiff cites, the Court of Appeals construed "charge" as used in the phrase "rent

---

statute sets out a series of specific items ending with a general term, that general term is confined
to covering subjects comparable to the specifics it follows."  *Hall St. Assocs., L.L.C. v. Mattel,*
*Inc.*, 552 U.S. 576, 586 (2008).

[7] For example, the canons, if they applied, might suggest that a business can give a credit
or like financial benefit (such as a discount) as an incentive, but cannot give a toaster oven or
baseball ticket.

or charge" in New York's hotel occupancy tax statute as limited to charges related to occupancy of a hotel room.  Significantly, however, the Court's interpretation of "charge" was not narrowly limited to charges analogous to "rent," but included service charges levied by remarketers of hotel rooms and a fee charged for using an in-room safe.  *Id.* at 127-28, 128 n.3.  Thus, the relevant caselaw does not provide a rationale for limiting the meaning of the phrase "credit or other incentive" under § 399-zzz so as to exclude incentives that "cannot be regarded as 'credits.'"  (P's Opp. at 6.)

Plaintiff also asserts that Defendant's interpretation violates the surplusage canon[8] because it renders the words "differential" and "credit" superfluous.  But these words have meaning under Defendant's and this Court's interpretation:  the statute prohibits a company from charging people differently if they want to receive a paper bill or pay by mail, unless the company is incentivizing a specific payment or billing option, which the company can do by offering a credit or other incentive.  Moreover, Plaintiff violates the surplusage cannon by looking only to the word "credit" and ignoring the words "or other."  *See Bellino v. JPMorgan Chase Bank, N.A.*, No. 14-CV-3139, 2016 WL 5793417, at *7 (S.D.N.Y. Oct. 3, 2016) ("[T]he Court attempts to give effect to every word of the statute, so as to avoid interpretations that would render any language superfluous."); *Andryeyeva*, 33 N.Y.3d at 176 ("[W]ords must be harmonized and read together to avoid surplusage.") (internal quotation marks omitted).  "Or" is a disjunctive, supporting a broader interpretation of "incentive" than that suggested by Plaintiff. *See United States v. Jones*, 965 F.3d 190, 194 (2d Cir. 2020) ("[T]he disjunctive 'or' within the phrase . . . calls for some distinction to be made . . . .") (internal quotation marks omitted);

---

[8] "In the construction of a statute, meaning and effect should be given to all its language, if possible, and words are not to be rejected as superfluous when it is practicable to give to each a distinct and separate meaning."  N.Y. Stat. § 231.

*United States v. Harris*, 838 F.3d 98, 105 (2d Cir. 2016) ("Established canons of statutory construction ordinarily suggest that terms connected by a disjunctive be given separate meanings.") (internal quotation marks omitted).  And the word "other" confirms that other different incentives are authorized.[9]

### 3. Legislative History

I need look no further than the text to decide this issue.  *See Barikyan v. Barr*, 917 F.3d 142, 144 (2d Cir. 2019) ("Statutory analysis necessarily begins with the plain meaning of a law's text and, absent ambiguity, will generally end there.") (internal quotation marks omitted).  But the outcome would be the same if I were to consider the statute's legislative history as a means of discerning legislative intent.

Plaintiff attaches a New York State Memorandum in Support of Legislation to her complaint and quotes the justification for the bill that became § 399-zzz:

> As the New York Legislature found, 'paper billing and payment fees unfairly impact consumers that do not have Internet access in their homes, as well as those that are uncomfortable using the Internet, including many senior citizens and those concerned about personal privacy.'  *See* NY State Assembly Memorandum In Support of Legislation, attached as Exhibit B.  Additionally, '[p]aper billing and payment fees disproportionately affect low-income consumers, who are less likely to have access to the internet.'  *Id.*  'Furthermore, such policies impose an additional burden on those customers who choose to file their billing statements for later reference, as such customers will be forced to bear the cost of printing electronic billing statements on their home printer.'  *Id.*

(AC ¶¶ 13-15 (alteration in original); *see id.* Ex. B.)

---

[9] Plaintiff repeatedly contends that "credit or other incentive" is an "exception" to the statute's prohibition on additional charges or differentials and must be interpreted narrowly.  (P's Opp. at 8, 12, 13.)  But I need not resort to the rule of construction that exceptions to statutes are to be construed narrowly, *see City of N.Y. v. Beretta U.S.A. Corp.*, 524 F.3d 384, 403 (2d Cir. 2008), because in this case the legislature has directly prescribed how the statute is to be construed.  In any event, interpreting the phrase according to the letter of its plain meaning is not a failure to construe it narrowly.

This Court recognizes the concerns that the Legislature sought to address, but cannot ignore the Legislature's directive regarding how the statute "shall not be construed."  *See Belton v. GE Capital Retail Bank* (*In re Belton*), 961 F.3d 612, 616 (2d Cir. 2020) ("[A] statute's purpose cannot circumvent its text.").  It is significant that the bill's primary sponsor, Senator Peralta, noted that the "legislation does *not* prohibit a company from providing incentives for *opt-in paperless billing and bill payment*, a clear alternative with positive environmental impact."  N.Y. Bill Jacket, L. 2010, ch. 556 at 5 (emphasis added).  Defendant incentivizes the very type of choices that Senator Peralta had in mind – namely, paperless (electronic) payment and paperless billing – and those options require the consumer to affirmatively elect them.

The New York Consumer Protection Board's letter to the governor provides further insight into the legislative history of Section 399-zzz.  The Board acknowledged that "[e]lectronic billing clearly provides a great cost savings for companies, and a real benefit for the environment with reduced paper usage," adding that "if a company or service provider wants to move its customers to electronic billing it should do so with incentive based tactics, . . . and not a broad sweeping fee imposed upon consumers as a penalty."  *Id.* at 14.  This suggests that the legislature disapproved any general flat fee or penalty for receipt of paper bills, but also knowingly approved incentives for consumers who opted to forgo them.

Interestingly, New York's Banking Department did not recommend the bill due to "possible preemption . . . by federal law and regulations," and the fact that "it [was] not clear how effective the bill would be in affecting the targeted practices."  The Banking Department commented:

> While prohibiting businesses from charging consumers who wish to receive paper bills or pay by mail 'an additional rate or fee or a differential in the rate or fee,' it specifically does not prohibit a business 'from offering consumers a credit or other incentive to elect a specific payment or billing option.'  While there is certainly a formal distinction

> between prohibiting an additional fee and permitting a credit, it is not clear that there is a
> great degree of practical difference.

*Id.* at 16.  This Court agrees that there might not be a great degree of practical difference –

prohibiting a fee and allowing an incentive may be opposite sides of the same coin – but here,

because Defendant provided an "incentive to elect a specific payment or billing option,"

permitted under the statute's second sentence, it did not impose a general fee or differential

prohibited under the statute's first sentence.  Therefore the motion to dismiss is granted.

## B.   Preemption

Defendant briefly argues that Plaintiff's claims are expressly preempted by the federal

Electronic Signatures in Global and National Commerce Act (the "E-SIGN Act"), 15 U.S.C.

§§ 7001 *et seq.*, which governs the use of electronic records and signatures in interstate

commerce.  (D's Mem. at 21.)  Specifically, Defendant argues that the E-SIGN Act authorizes a

company to charge fees for paper copies of a billing statement.  (*Id.* at 23.)  Plaintiff asserts that

"the E-SIGN Act does *not* authorize Defendant to charge for paper billing statements."  (P's

Opp. at 19 (emphasis in original).)  Neither side cites any case law that supports their position.  I

need not reach this issue, but it seems to me that Plaintiff has the better of the argument.

Defendant cites subsections (c)(1)(B)(i) and (c)(1)(B)(iv) of the E-SIGN Act, which are

included in a section regarding obtaining a consumer's consent to electronic records.  *See* 15

U.S.C. § 7001.  These subsections provide (in relevant part) that when information relating to a

transaction must be provided to a consumer in writing, the writing may be in electronic form if

the consumer consents, as long as before consenting, the consumer is informed of:  any right or

option to obtain a paper writing; the option to withdraw consent and whether any fees will be

associated with that withdrawal; how, after the consent, the consumer may request a paper

record; and whether any fee will be charged for that paper record.  *Id*. § 7001(c)(1)(B)(i), (iv).

As Plaintiff argues, the "plain language of the statute makes clear that it refers to the receipt of paper copies of electronic records *after* consent to receive electronic records is acquired," and "[t]his is all the more apparent when considering that this subsection is found in the 'Consent to electronic records' section of the statute, and is one of four enumerated requirements for obtaining consent" to electronic records.  (P's Opp. at 19.)

Defendant's best support for its position is a February 28, 2003 opinion letter from the New York Insurance Department (now the Department of Financial Services) explaining that the consumer consent and disclosure provisions of § 7001 "contemplate that a fee may be charged for providing paper documentation."  N.Y. Gen. Counsel Op. No. 2-28-2003 (#2), 2003 WL 24312341, at *2 (N.Y. Ins. Bull.).  In that letter, the Department also opined "there is no provision in the New York Insurance Law or in ESRA [the New York Electronic Signatures and Records Act] that would bar a company from charging a fee for a paper copy of a record that the company can properly transmit electronically."  *Id.*  But as Plaintiff points out, the February 28, 2003 letter pre-dates the enactment of GBL § 399-zzz by almost a decade.

The federal E-SIGN Act is silent about charging a fee for paper records from the outset (as opposed to after consent to electronic notification has been given), and thus, if I had to reach the issue, I would not regard it as expressly preempting GBL § 399-zzz.  *See, e.g.*, *Canale v. Colgate-Palmolive Co.*, 258 F. Supp. 3d 312, 323 (S.D.N.Y. 2017) (finding no preemption where "Defendant [did] not identif[y] any federal requirements applicable").

## IV.   <u>LEAVE TO AMEND</u>

Leave to amend a complaint should be freely given "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  "[I]t is within the sound discretion of the district court to grant or deny leave to amend."  *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018) (internal quotation marks omitted).

"Leave to amend, though liberally granted, may properly be denied" for "'futility of amendment,'" among other reasons. *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Plaintiff has already amended once, (*see* AC), after having the benefit of a pre-motion letter from Defendant, (Doc. 8), as well as the Court's observations during the pre-motion conference, (*see* Minute Entry dated Jan. 10, 2020).  In general, a plaintiff's failure to fix deficiencies in the previous pleading, after being provided notice of them, is alone sufficient ground to deny leave to amend.  *See Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 257-58 (2d Cir. 2018) ("When a plaintiff was aware of the deficiencies in his complaint when he first amended, he clearly has no right to a second amendment even if the proposed second amended complaint in fact cures the defects of the first.  Simply put, a busy district court need not allow itself to be imposed upon by the presentation of theories *seriatim*.") (internal quotation marks, alteration, and footnote omitted); *In re Eaton Vance Mut. Funds Fee Litig.*, 380 F. Supp. 2d 222, 242 (S.D.N.Y. 2005) (denying leave to amend because "the plaintiffs have had two opportunities to cure the defects in their complaints, including a procedure through which the plaintiffs were provided notice of defects in the Consolidated Amended Complaint by the defendants and given a chance to amend their Consolidated Amended Complaint," and "plaintiffs have not submitted a proposed amended complaint that would cure these pleading defects"), *aff'd sub nom. Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 118 (2d Cir. 2007) (*per curiam*) ("[P]laintiffs were not entitled to an advisory opinion from the Court informing them of the deficiencies in the complaint and then an opportunity to cure those deficiencies.") (internal quotation marks omitted).

Further, Plaintiff has not asked to amend again or otherwise suggested she is in possession of facts that would cure the deficiencies identified in this opinion.  Indeed, "[t]he problem with [Plaintiff's] cause[] of action is substantive," and "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).  Accordingly, the Court declines to grant leave to amend *sua sponte*.  *See TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (plaintiff need not be given leave to amend if he fails to specify how amendment would cure the pleading deficiencies in his complaint); *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (district court did not err in dismissing claim with prejudice in absence of any indication plaintiff could or would provide additional allegations leading to different result); *Porat v. Lincoln Towers Cmty. Ass'n*, 464 F.3d 274, 276 (2d Cir. 2006) (*per curiam*) (no abuse of discretion in denying leave to amend where plaintiff's counsel made no showing that complaint's defects could be cured); *see also Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015) (denial of leave to amend would be proper where "request gives no clue as to how the complaint's defects would be cured") (internal quotation marks omitted).

## V.     CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is GRANTED.  The Clerk of Court is respectfully directed to terminate the pending motion, (Doc. 17), and close the case.

**SO ORDERED.**

Dated:  November 9, 2020
            White Plains, New York

_____
            CATHY SEIBEL, U.S.D.J.